IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| Blackwell, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 21-cv-3073 |

## ORDER AND OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Now before the Court are Plaintiff's Motion for Summary Judgment (Doc. 12) and Defendant's Motion for Summary Affirmance (Doc. 15).[1] The Motions are fully briefed, and for the reasons stated herein, Plaintiff's Motion for Summary Judgment is granted, Defendant's Motion for Summary Affirmance is denied, and this matter is remanded to Defendant for further proceedings.

---

[1] References to the pages within the Administrative Record will be identified by R. [page number]. The Administrative Record appears at Docket Entry 8 (Doc. 8).

I.   **Background**

Plaintiff, a high school graduate with additional education who was 54 years old at the time of the alleged onset date, states she has a combination of medical problems including diabetic neuropathy, obesity, bipolar, anxiety, depression, severe degenerative arthritis in both shoulders, and chronic headaches. Doc. 13 at 1. Her past work included day care worker, seasonal tax preparer, commercial driver, debt collector and personal assistant/driver for the Salvation Army. R. 507.

On October 1, 2018, Plaintiff filed a Title II application for a period of disability and for disability insurance benefits (DIB). On October 30, 2018, Plaintiff filed a Title XVI application for supplemental security income (SSI). In both applications, Plaintiff alleged disability beginning on September 6, 2017.

The claims were denied initially and again upon reconsideration. On August 21, 2020, Plaintiff, represented by counsel, appeared for a hearing before the Administrative Law Judge (ALJ) during which the ALJ heard testimony from Plaintiff and an impartial vocational expert. R. 168-218. On October 13, 2020, the ALJ issued an unfavorable decision R. 52-65. In 2021, the Appeals Council denied review making the ALJ's decision the final decision. R. 1-7; *see generally Bulter v. Kijakazi*, 4 F.4th 498, 500 (7th Cir. 2021).

## II.  Disability Standard

To qualify for DIB and SSI, a claimant must be "disabled" as defined in the Social Security Act ("the Act"). A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

To determine if a claimant is disabled, the ALJconducts a five-step inquiry. 20 C.F.R. § 404.1520. At Step One, the ALJ determines whether Plaintiff is engaged in substantial gainful activity. *Id.* at (a)(4)(i). At Step Two, the ALJ determines whether Plaintiff's impairments are severe. *Id.* at (a)(4)(ii). An impairment is "severe" if it significantly limits Plaintiff's ability to perform basic work activities. *See* 20 C.F.R. 404.1520(c). At Step Three, the ALJ determines whether any of Plaintiff's impairments, alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404 of the C.F.R. 20 C.F.R. § 404.1520(a)(4)(iii). At Step Four, the ALJ evaluates Plaintiff's residual functional capacity ("RFC") and determines whether Plaintiff can perform past relevant work based on the RFC. *Id.* at (a)(4)(iv). The RFC represents the most a Plaintiff can do given his limitations. 20 C.F.R. § 404.1545(a). An RFC includes limitations for all medically determinable impairments, including non-severe

impairments. 20 C.F.R. § 404.1545(a)(2). To determine an RFC, the ALJ must consider Plaintiff's symptoms; their intensity, persistence, and limiting effects; and the consistency of these symptoms with the objective medical evidence and other evidence in the record. *Id.* at (a)(1). Finally, at Step Five, the ALJ determines whether Plaintiff can perform other work. 20 C.F.R. § 404.1520(a)(4)(v). The ALJ may require the testimony of the vocational expert ("VE") to make a Step Five determination. The claimant bears the burden of proof at every step except the fifth. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

At Step One, the ALJ found Plaintiff has not engaged in substantial gainful activity since September 6, 2017.  At Step Two, the ALJ determined Plaintiff has the severe impairments of diabetes mellititus, peripheral neuropathy in the lower extremities, spine disorders, and obesity.  At Step Three, the ALJ concluded Plaintiff's impairments did not meet or equal the severity of a list impairment.

At Step Four, the ALJ concluded Plaintiff retained the RFC to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except:

> . . . she is limited to occasional climbing of ramps, stairs, and ladders; she cannot climb ropes or scaffolds; she is limited to occasional stooping, kneeling crouching and crawling; and, she needs to avoid concentrated exposure to extreme cold, extreme heat, fumes, odors, dusts and gases.

R. 61. Finally, at Step Five, the ALJ determined Plaintiff was capable of performing past relevant work as a customer service representative.

### III.  Standard of Review

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standard and the decision is supported with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue,* 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.* On appeal, the Court, while reviewing the entire record, does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v Apfel*, 152 F3d 636, 638 (7th Cir. 1998). While significant deference is afforded to the ALJ's determination, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The "ALJ must 'build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence.'" *Id.* (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)). The ALJ's decision "must provide enough discussion for [the

5

Court] to afford [Plaintiff] meaningful judicial review" to determine the cogency of the ALJ's decision. *Jeske v. Saul*, 955 F.3d 583, 586-587 (7th Cir. 2020).

## IV. Analysis

Plaintiff argues this case should be remanded for three reasons. First, the ALJ mischaracterized medical evidence and reported activities to find that Plaintiff's description of the nature and limiting effects of her impairment is not "entirely consistent" with the evidence, violating Social Security Ruling (SSR) 16-3p. Doc. 13 at 18. Second, the ALJ erred in failing to assess any severe mental impairments. Doc. 13 at 23. Finally, Plaintiff argues the Appeals Counsel erred in finding that the submitted evidence was not "new and material." Doc. 13 at 17. The Defendant claims that the ALJ committed no error in considering evidence as related to Plaintiff's limitations, that the ALJ properly determined that Plaintiff had no severe mental impairments, and that the Appeals Counsel did not err in refusing to review newly submitted evidence. Doc. 16 at 3, 6, 11.

### a. Mischaracterization of Evidence

Plaintiff argues that the ALJ mischaracterized and exaggerated

reported activities and medical evidence to reinforce the ALJ's claim that Plaintiff's alleged impairments were "not fully consistent"[2] with the evidence in violation of Social Security Rule 16-3p (Rule 16-3p). Defendant argues that Plaintiff's criticism of the ALJ is simply an impermissible request for this Court to reweigh the evidence the ALJ already considered.

Rule 16-3p directs the ALJ to focus on the "intensity and persistence of the applicant's symptoms." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016). Rule 16-3p provides that all the evidence, including objective medical evidence, is to be considered in evaluating the intensity and persistence of an individual's symptoms to "determine how [those] symptoms limit [the individual's] ability to perform work-related activities." Rule 16-3p, at 2. In this evaluation, the ALJ need not address every piece of evidence in the record, but an ALJ may not ignore an entire line of evidence contrary to her ruling." *Reinas v. Saul*, F.3d 461, 467. (7th Cir. 2020) (internal citation omitted). An ALJ may not "cherry-pick evidence from the record to support their conclusions, without engaging with evidence that weighs against their findings." *Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th Cir. 2018).

---

[2] While Plaintiff argues that the ALJ applied the wrong standard by using the phrase "not fully consistent," the Seventh Circuit has made it clear that the use of the phrase by itself is not reversible error. *Gedatus v Saul*, 994 F.3d 892, 900 (7th Cir. 2021); *Fanta v Saul*, 848 F.App'x 655, 659 (7th Cir. 2021).

In assessing the severity of Plaintiff's physical impairments, the ALJ addressed only five medical records to conclude that her alleged symptoms were inconsistent with medical evidence. The first three records he cited included a scoliosis study and an MRI study and corresponding physicians notes from treating physician Dr. Pineda in July 2018 and April 2019. R. 62, 678-679, 789, 1533-1535. From these records, the ALJ noted that since Plaintiff's back surgery, while there was multilevel spondylosis and some hardware lucency, there was only mild to moderate neural foraminal narrowing and alignment was found grossly unchanged. R. 62. Based upon this recitation, the ALJ concluded that any back problem or back surgery complications were not severe enough for her physicians to recommend additional, corrective back surgery. R. 62.

As Plaintiff pointed out, this is not true. Doc. 13 at 21. During an appointment in January 2020, Dr. Pineda noted that Plaintiff had a crack in one of the surgical rods or the rod connecters and was clearly "tipping forward off of her old spinal fusion". R. 1082. He concluded that surgery was not a "logical" option to correct the tipping "because her medical risk is substantial" noting her diabetes, heart problems, fluid overload, and excess weight unrelated to the fluid overload. *Id.* He therefore relegated her to pain control. *Id.* This directly contradicts the ALJ's assertion

8

Plaintiff's physicians did not contemplate additional surgeries and was not addressed at any point by the ALJ.

The fourth medical record that the ALJ discussed was an exam performed by a consulting internist, Dr. Chapa, in January 2019. R. 62, 878-884. The ALJ spent most of his sparse review of medical evidence on this report. His summary stated:

> . . . although the claimant was hunched over and may have required the use of an assistive cane, the examination failed to show any muscle spasms, edema, motor weakness, or muscle atrophy. There was no joint redness, heat, swelling, or thickening. She had full grip strength, and had full range of motion in all joints, other than slightly decreased motion in the right hip and lumbar spine. She claimed dull pinprick sensation in both feet and was absent reflexes. She was not diagnosed with degenerative disc disease or another orthopedic disorder, but rather with diabetic peripheral neuropathy, obesity, diabetes, and history of psychiatric disorder. It was concluded that any difficulty she had walking was due to neuropathy.

R. 62.

While this summary of Dr. Chapa's exam findings is not inaccurate, it does not address various medical records that contained findings to the contrary. For example, in July 2018, Plaintiff's treating physician's musculoskeletal exam found "lumbar pain, altered gait due to pain, decreased flexation due to pain at waist, pain with palpitation of LLback, some muscle tightness noted." R. 864. In April of 2019, Plaintiff's treating physician diagnosed her with myofascial pain, including painful muscle spasms. R.1026.

9

Additionally, although the ALJ noted Dr. Chapa's failure to diagnose Plaintiff with degenerative disc disease or another orthopedic disorder, documents in the record also show otherwise. For example, the examination notes that the ALJ relied on to find that Plaintiff's back problems and back surgery complications were not severe enough to need additional surgery specifically state that Plaintiff had "multilevel degenerative disc disease." R. 1533. Further, the other medical exam that the ALJ relied on for the same proposition stated Plaintiff has "multilevel degenerative changes within the cervical spine." R. 1084.

The fifth medical record that the ALJ relied on was a nerve conduction study performed in September 2018 when Plaintiff complained of left wrist pain and bilateral hand numbness. R. 659-665. From this the ALJ determined that "nerve conduction studies were positive for bilateral median neuropathy but not severe enough to recommend surgical intervention or more than conservative treatment for bilateral diabetic lower extremity neuropathy." R. 62. The nerve conduction study was only performed on Plaintiff's palms, wrists, forearms, and elbows. R. 661-664. No studies were performed on Plaintiff's lower extremities. To contrast, in January, February and June 2020, Plaintiff's treating medical provider determined Plaintiff had 2+ pitting edema bilaterally in her lower extremities. R. 1095, 1110, 1116. During one appointment in January

2020, Plaintiff had 3+ pitting edema bilaterally in her lower extremities. R. 1126. Due to the lower extremity swelling, she was referred to rehabilitation therapy and had to use compression wraps. *Id.*

In arguing that the ALJ adequately addressed the medical findings, the Defendant points to the medical expert opinions in the record for support. Doc. 16 at 4. However, the ALJ expressly found the state agency medical sources, the only opinions in the record, not persuasive due to the volume of medical records submitted after the opinions were given. R. 63. Additionally, Dr. Chapa's report, relied on by the ALJ, predated the opinions the ALJ rejected. Dr. Chapa's examinations occurred in January and March of 2019 while the opinions, which consulted Dr. Chapa's examination notes, were dated March 2019 and August 2019. R. 878-893.

When addressing Plaintiff's statements about pain and other limiting effects of her symptoms, the ALJ repeated many of the same assertions he did when addressing the medical evidence alone. The ALJ stated:

> . . . the record does not include findings to show that [Plaintiff] has the significantly limited range of motion, muscle spasms, muscle atrophy, or motor weakness, which are associated with disabling pain.

R. 62. To the contrary, as stated above, Plaintiff's doctor diagnosed her with myofascial pain and painful muscle spasms. R. 1026. Additionally, a musculoskeletal exam performed by her treating physician found lumbar

pain, altered gait due to pain, decreased flexion due to pain, pain with palpation of the lower back and muscle tightness. R. 864.

The ALJ further concluded Plaintiff's statements of pain and physical limitations were inconsistent with the record because her:

> . . . [r]ange of motion loss of the lumbar spine and right hip were not found to be significant enough to diagnose degenerative disc disease or another orthopedic impairment.

R. 62. For this, the ALJ again cited Dr. Chapa's exam. However, as stated above, in April 2019, Plaintiff's treating physician diagnosed her with multilevel degenerative disc disease, found fluid collection within the laminectomy bed, and found blooming artifact limited the evaluation of the spinal canal and foramina. R. 1533-1534.

Based upon the above, the Court concludes that the ALJ failed to build a logical bridge from the evidence to his conclusion and failed to address multiple findings in the record that were contrary to his conclusion. This requires remand. *Clifford,* 227 F.3d 863 at 872; *Plessinger*, 900 F.3d at 915. Because remand is necessary, the Court need not address the remaining errors claimed by Plaintiff. However, this does not mean that the Defendant should presume that the additional issues were excluded due to lack of identified errors.

## V. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment (Doc. 12) is granted, Defendant's Motion for Summary Affirmance (Doc. 15) is denied, and this matter is remanded to Defendant for further proceedings. All other pending motions are denied as moot.

**IT IS SO ORDERED.**
**ENTERED: October 11, 2023**
**FOR THE COURT:**

      /s/Sue E. Myerscough
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**